UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALICE LAZARUS HABER,

        Plaintiff,

  - against -

NATIONAL RAILROAD PASSENGER CORPORATION
d/b/a AMTRAK, METROPOLITAN TRANSPORTATION
AUTHORITY, LONG ISLAND RAILROAD COMPANY
and ABM INDUSTRIES, INC.,

        Defendants.
-----------------------------------------------------------------------X

07 CV 7060

**PLAINTIFF'S RESPONSE TO DEFENDANTS FIRST SET OF INTERROGATORIES**

  Plaintiff, ALICE LAZARUS HABER, discloses the following as required by Rule 33 of the Federal Rules of Civil Procedure, by and through her attorneys, LEAV & STEINBERG, LLP., upon information and belief:

  1. Plaintiff's full name is ALICE LAZARUS HABER. Her date of birth is November 30, 1933 and her social security number is 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. Her present residential address is 5800 Nicholas Lane, Rockville, Maryland 20852.

  2. Plaintiff has not had a prior accident and has not sustained any injuries prior to the accident which is the basis of this law suit.

  3. Plaintiff sustained the following serious, severe and grievous personal injuries:

   a) Left displaced Schatzker type 2 depressed tibial plateau fracture;

   b) Unable to bear weight on left leg;

   c) Left knee pain with minimal effusion and decreased range of motion;

   d) Inability to flex knee;

   e) Infection of jawbone;

   f) 3 tooth implants;

   g) Back pain;

   h) Anxiety;

      i) Increase in Depressive disorder;

That on October 17, 2006, under anesthesia, plaintiff underwent the following operative procedures: 1) Left tibial plateau fracture, open reduction; 2) Internal fixation plus use of allograft as follows:

After the patient was identified in the holding area and the left lower extremity marked, the patient was brought to the operative suite and placed on the supine position. After receiving general endotracheal intubation and IV antibiotics by anesthesia, all pressure points were well padded. A tourniquet was placed on the left upper thigh. The left lower extremity was prepped and draped in a normal sterile fashion. The tourniquet was inflated to 300. Then a midline excision extending to the hockey-stick incision proximally at the level of the joint was then made. After skin incision made, subcutaneous layer was divided in line with the incision. Then this fascia over the anterior tibialis was then split in a prophylactic. There was hematoma noted under the tibialis muscle. This was then evacuated. Then the prophylactic fasciotomy was then done at the anterior compartment with the Mayo scissors distally. The compartments were noted to be soft. A good viable muscle was noted. Next, attention was then placed to identifying the lateral tibial plateau fracture with a 15-blade and a sharp dissection was then performed. Then an arthrotomy of the joint was then made with under this meniscus after preserving the meniscus attachment using Ethibond sutures x2. At this time elevated the meniscus to identify and directly visualize the lateral tibial plateau cartilage which showed the depression. Then the lateral tibial plateau displaced fragment anterolateral was then opened up as an open block. This was accessed directly to the fracture site. There was a hematoma, a large effusion was noted inside after arthrotomy was performed. The knee joint was then evacuated with irrigation of normal saline. The fascial debridement also curetted with a curette and normal saline. Next, a bone template was then used to elevate the depressed fragment and there was also a comminuted piece anterior of the lateral tibial plateau. This was then elevated to help provisionally with 0.62 K-wires x-2. Then this also showed good position on fluoroscopic imaging. Then 30 mL of corticocancellous chips were impacted in tightly with bone template. Then the lateral tibial

plateau fragment was then reduced and then held with provisional K-wires x2, and the proximal tibial locking plate was then applied and then provisionally held proximally with 2-0 K wire into the medial tibial plateau and then held reduced with a large bone tenaculum clamp. Holding both condyles in place. After this was performed, a second K-wire was then placed to secure the plate distally. Then a 3.5-mm bicortical screw was then placed and this was then drilled. Then partially threaded 4.0 screw was then placed in the proximal tibia screw to reduce the plate to the bone. Then, 2 additional 4.0 locking screws were placed until the proximal portion of the plate into the lateral and medial condyles. Then the middle partial lag screw was then exchanged for a locking screw and then the provisional K-wires were then removed. Then distally a bicortical 4.0 locking screw was then placed which was felt to be in good position. Then, 5 mL of bone cement was used for bone filler anteriorly into the defect. Then a final view of fluoroscopic imaging showed good reduction of fracture site and placement of hardware. Then using the Ethibond suture, it was reattached for meniscal repair at the plate and then attached with Ethibnd sutures for reattachment. Prior to wound closure, the tourniquet was let down and prior to irrigation. Then, 0 Vicryl was used to close the arthrotomy incision interrupted. After Pulsavac irrigation was performed with normal saline, then the fascia proximally over the proximal plate was reapproximated and the remaining fasciotomy left opened. A Hemovac drain was then placed into the deep fascia x1. Then, 2-o Vicryl was used to close the subcutaneous closure. Then, 3-0 nylon horizontal mattress was used for skin closure. Sterile dressing was then applied. Then, a sterile dressing was then applied with Ace wrap and knee mobilizer. The patient was brought to the recovery room in stable condition.

 That on June 1, 2007, plaintiff underwent a Bilateral L4-5 and L5-S1 Epidural block;

 That the above injuries were accompanied by and productive of pain; pulling sensation; numbness; tenderness; rigidity; stiffness; swelling; inflammation; weakness; denervation; paresthesia; synovitis; scarring; tightness; malfunction; spasms; restriction and limitation of all movement, motion and bending; post-traumatic arthritis and/or arthritic changes; osteoarthritis; pain on change of weather; soreness; muscle spasms; induration; mal coordination; effusions;

edema; loss of strength; fatigue; thickening; contracture; softening; fragmentation; ecchymosis; myositis; atrophy; sensitivity; shrinking; anesthesia; nerve damage; separation; calcification; osteoporosis; tearing; neuropathy; adhesions; difficulty sleeping; narrowing; instability; difficulty walking, standing, and climbing stairs; difficulty and pain bending and straightening up; restricted full and guarded movements; limited motion with pain; movements with great difficulty; abnormal gait with limping; non-weight bearing; buckling; torn ligament; decreased range of motion in all planes; decreased strength; medial and lateral leg pain increased by ambulation and weight bearing; gait abnormality; pain and swelling of the left leg and knee; inability to bear any weight to left foot; tenderness to the left leg; pain, swelling and discoloration of left ankle; discomfort, deformity, and disability; inability to be mobile requiring use of wheelchair and other devices to aid in mobilization;

The foregoing injuries, if not caused by this occurrence, were aggravated, activated, precipitated and/or exacerbated by same;

Plaintiff has been advised that the aforementioned conditions are of a chronic and protracted nature and will have permanent residual effects and will manifest permanent sequelae and plaintiff expressly claims any and all sequelae and/or residuals which may manifest themselves prior to the time of trial;

Plaintiff further claims any and/or all damage or injury to surrounding tissues, ligaments, cartilages, muscles, and supporting structures at the site of the injuries;

Plaintiff underwent extensive physical therapy; required the use of a wheelchair and further required analgesics and medications;

Upon information and belief, plaintiff will require further surgery;

Upon information and belief, the foregoing injuries are permanent.

4) Plaintiff has received treatment at the following facilities and/or from the following medical providers:

a) Saint Vincent Catholic Medical Centers  Dates of Service:
153 West 11th Street  10/16/06-10/26/06
New York, NY 10011

b) Manor Care Potomac  Dates of Service:
10714 Potomac Tennis Lane  10/26/2006-11/1/06
Potomac, MD 20854

c) Adventist Home Health:  Dates of Service:
12041 Bournefield Way, Suite B  11/2/06-12/28/06
Silver Spring, MD 20904

d) Bethesda-Chevy Chase Orthopaedic  Dates of Service:
Dr. Cannova  01/2007-Current
10215 Fernwood Road
Bethesda, MD 20817

e) Zupnik, Winson and Chen, D.D.S., P.A.
8218 Wisconsin Avenue, Suite 203
Bethesda, MD 20814

f) Dr. Gerald S. Gordon
8001 Inspection House Road
Potomac, MD 20854

g) Cohen, Goodman, Simon, Ribera and Menhinick, P.A.
5454 Wisconsin Avenue, Suite 1355
Chevy Chase, MD 20815-6921

5) Plaintiff underwent the following operative procedures as a result of the injuries sustained in this accident:

    a) Left tibial plateau fracture, open reduction and internal fixation plus use of allograft; performed on October 17, 2006 at the following facility:

    St. Vincent Catholic Medical Centers

6) Plaintiff is currently receiving treatment at the following facilities:

    a) Bethesda-Chevy Chase Orthopaedic Associates, L.L.P.
       The Camalier Building, Suite 506
       Dr. Cannova and Dr. Scheff
       10215 Fernwood Road
       Bethesda, MD 20817

9) Plaintiff was not employed at the time of the accident and remains unemployed.

10) Plaintiff is in possession of photographs depicting the location of the accident and annexed to plaintiff's response to defendants demand for production of documents are copies thereof.

11) Plaintiff has not yet performed any tests, investigations or inspections pertaining to the facts or causes of this accident.

12) Plaintiff is not in possession of any statements pertaining to the facts, causes or circumstances of this accident.

13) Defendants, their agents, servants and/or employees were careless, reckless and negligent in the ownership, operation, management, maintenance, supervision, care, custody, charge and control of the aforesaid train and the platform thereat; in failing to provide for the protection and safety of persons lawfully upon said platform, riding and utilizing said train/platform, more particularly the plaintiff herein; in failing to take any and all reasonable precautions to safeguard against this occurrence; in failing to give plaintiff an opportunity to avoid this occurrence; in failing to properly and/or timely remedy or otherwise rectify the aforesaid dangerous and hazardous conditions existing thereat although they had or should have had notice thereof in view of the fact that said conditions existed for some time prior to the occurrence herein; in failing to provide adequate, sufficient and/or competent personnel to ensure against this occurrence and to maintain said platform in a safe and proper manner; in failing to warn plaintiff of the dangerous and hazardous conditions existing thereat; in that they created the aforesaid dangerous and hazardous conditions, namely a hole that created a dangerous and hazardous condition ; in allowing the foregoing to exist with notice; in carelessly, recklessly and negligently creating a hazard endangering the life and limb of plaintiff and others lawfully on the platform; in causing permitting and/or allowing a trap to exist at said location; in causing permitting and/or allowing the existence of the condition which constituted a trap, nuisance, menace and danger to plaintiff; in failing to give plaintiff adequate and/or timely notice or warning of said condition; in negligently and carelessly causing and permitting the above said place to be and remain in said dangerous condition for an

unreasonable length of time; in failing to exercise that degree of care which is reasonably prudent under the circumstances; in that they failed to use due care, caution, precaution and diligence in this matter; in failing to inspect, properly inspect and/or timely inspect the platform, in failing to remedy or otherwise rectify the aforesaid dangerous and hazardous conditions; in failing to train and/or properly train their personnel in the safe and proper manner to ensure against this occurrence; in failing to detect the aforesaid dangerous and hazardous condition of the aforesaid platform during routine cleaning and inspection; in failing to provide adequate lighting and/or illumination thereat; in failing to comply with those statutes, ordinances, rules, regulations and industry standards applicable to said situation; in violating the applicable laws, statutes, codes, rules, regulations and ordinances in such cases made and provided; and in the gross, wanton, reckless and willful acts of defendant, its agents, servants and/or employees; they were otherwise careless, reckless and negligent under the circumstances and failed to exercise reasonable care and prudence herein.

14) Plaintiff is currently unaware of the names of witnesses she intends to call upon to testify in her support.

15) Plaintiff has not yet retained the services of an expert witness. If or when one is obtained, it will be provided pursuant to the C.P.L.R.

Date: New York, New York
October 30, 2007

> LEAV & STEINBERG, LLP
>
> By: _____
> DANIEL T. LEAV (DTL 5145)
> Attorneys for Plaintiff
> 120 Broadway, 18th Floor
> New York, New York 10271
> (212) 766-5222

7

TO:

LANDMAN CORSI BALLAINE & FORD P.C.
By: Ronald E. Joseph
Attorneys for Defendants
NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK, METROPOLITAN
TRANSPORTATION AUTHORITY and LONG ISLAND
RAILROAD COMPANY
120 Broadway, 27th Floor
New York, New York 10271
(212) 238-4800

CERTIFICATE OF SERVICE

I certify that under penalty of perjury pursuant to 28 U.S.C. Section 1746 that on November 1, 2007, I caused to be served upon the following, by First Class United States Mail, postage prepaid, a true copy of the attached Plaintiffs' Automatic Disclosure by depositing same in a postage-paid envelope in a U.S. Postal Box within New York addressed to:

COUNSEL FOR DEFENDANTS

LANDMAN CORSI BALLAINE & FORD P.C.
By: Ronald E. Joseph
120 Broadway, 27th Floor
New York, New York 10271

Dated: New York, New York
       November 1, 2007

_____
DANIEL T. LEAV (DTL 5145)